IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

CHATTANOOGA-HAMILTON
COUNTY HOSPITAL AUTHORITY
d/b/a ERLANGER HEALTH
SYSTEM,

    Plaintiff,

v.

                         CIVIL ACTION FILE NO.:
                         4:15-CV-0250-HLM

WALKER COUNTY, GEORGIA,

    Defendant.

## ORDER

This case is before the Court on the Motion to Dismiss or in the Alternative Motion to Consolidate ("Motion to Dismiss") filed by Defendant Walker County, Georgia ("Walker County") [5].[1]

---

[1] Walker County failed to include page numbers in both its Motion to Dismiss and its reply in support of that Motion. (See

## I.   Procedural Background

On December 28, 2015, Plaintiff Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System ("Erlanger") filed its Complaint.  (Docket Entry No. 1.)  On January 19, 2016, Walker County filed its Motion to Dismiss.  (Docket Entry No. 5.)  The briefing process for the Motion to Dismiss is complete, and the Court finds that the matter is ripe for resolution.

---

generally Mot. Dismiss (Docket Entry No. 5); see generally Reply Supp. Mot. Dismiss (Docket Entry No. 9).)  Those documents do not comply with the Local Rules.  See N.D. Ga. R. 5.1E ("All pages shall be numbered consecutively at the bottom center of the page.").  The Court **DIRECTS** counsel for Walker County to comply with the Local Rules for all future filings, and notes that the complete text of the Local Rules is available for free via the Court's website: www.gand.uscourts.gov.

## II.  Erlanger's Allegations

Erlanger is a Tennessee hospital authority organized under Tennessee law, and it has its principal place of business in Chattanooga, Tennessee.  (Compl. (Docket Entry No. 1) ¶ 1.)  "Walker County is a political subdivision and county of the State of Georgia."  (Id. ¶ 2.)  Erlanger alleges that this case is related to Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System v. Hospital Authority of Walker, Dade and Catoosa Counties, et al., Civil Action File No. 4:14-CV-0040-HLM (the "Hutcheson Action"), which is currently pending before the Court.  (Id. ¶ 6.)

On or about April 25, 2011, the Hospital Authority of Walker, Dade, and Catoosa Counties (the "Hospital

3

AO 72A
(Rev.8/8
2)

Authority") entered into a Line of Credit Note (the "Line of Credit") with Erlanger.  (Compl. ¶ 7.)  Under the Line of Credit, Erlanger extended, and later funded, a $20,000,000 line of credit to provide working capital for Hutcheson Medical Center, Inc. ("Hutcheson").  (Id.)

As security for the Line of Credit, the Hospital Authority provided Erlanger with a Deed to Secure Debt and Security Agreement (the "Deed to Secure Debt"), which granted Erlanger a lien or a first position security interest in approximately fifty-three acres of land then owned by the Authority, which was located in Walker and Catoosa Counties, as well as the buildings and improvements thereon (the "Erlanger Collateral"). (Compl. ¶ 8.) As further security for the Line of Credit, the Hospital Authority

assigned its rights under an April 25, 2011, Intergovernmental Agreement (the "Intergovernmental Agreement") with, among others, Walker County, to Erlanger. (Id. ¶ 9.) In the Intergovernmental Agreement, Walker County agreed to pay the Authority and/or its assigns an amount equal to one-half of the sums due under the Line of Credit, up to a maximum of $10 million. (Id. ¶ 10.) Under the Intergovernmental Agreement, Walker County had the option, which it exercised, to allow Erlanger to proceed with non-judicial foreclosure against the Erlanger Collateral and to credit a portion of the proceeds received from that non-judicial foreclosure to the total indebtedness owed by the Hospital Authority. (Id. ¶ 11.)

AO 72A
(Rev.8/8
2)

The Line of Credit matured on September 19, 2013, and the outstanding balance, which was well in excess of $20 million, became due and payable. (Compl. ¶ 12.) The Hospital Authority did not remit payment to Erlanger. (Id.)

On February 27, 2014, Erlanger filed the Hutcheson Action, in which it sought to recover from the Hospital Authority and Hutcheson the amounts that were owed to it under the Line of Credit. (Compl. ¶ 13.) Erlanger notes that Hutcheson separately guaranteed the Hospital Authority's debt under a Joinder Agreement. (Id.)

Erlanger also initiated non-judicial foreclosure proceedings under the Deed to Secure Debt. (Compl. ¶ 14.) The Court ultimately held that Erlanger could proceed with foreclosure, but it stayed foreclosure pending

AO 72A

(Rev.8/8
2)

Hutcheson's appeal.  (Id.)  Hutcheson's appeal currently remains pending, subject to being dismissed by Hutcheson under a settlement agreement.  (Id.)

At approximately the same time, Hutcheson filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"). (Compl. ¶ 15.)  The Hospital Authority later sought to transfer the Erlanger Collateral to Hutcheson and to Hutcheson Medical Division, Inc. ("HMD").  (Id. ¶ 16.) Erlanger filed an action seeking to enjoin the transfer on a number of grounds.  (Id.)  On October 29, 2015, the Court referred Erlanger's complaint in that action to the Bankruptcy Court.  (Id.)  According to Erlanger, "[a]lmost immediately, the [Hospital] Authority transferred the

AO 72A

(Rev.8/8
2)

Erlanger Collateral to [Hutcheson and HMD] (for no consideration)." (Id.) Erlanger continued to challenge the transfer in the Bankruptcy Court, and it attempted to have the transfer avoided there. (Id. ¶ 17.)

Hutcheson, HMD, and their Chapter 11 Trustee (the "Trustee") sought leave to sell the Erlanger Collateral to third party purchasers, and Erlanger sought to have the transfer to Hutcheson and HMD declared void. (Compl. ¶ 18.) Shortly before a trial of those claims in the Bankruptcy Court, the parties, including Erlanger, the Trustee, the Official Committee of Unsecured Creditors to the Debtors (the "Committee"), Catoosa County, Walker County, and Regions Bank ("Regions") reached a global settlement of their disputes relating to the Erlanger Collateral. (Id.) On

8

AO 72A
(Rev.8/8
2)

December 14, 2015, the Bankruptcy Court approved those
parties' Settlement Agreement, and, in doing so, entered
findings of fact and conclusions of law (the "Findings and
Conclusions").    (Id. ¶ 19.)    Among other things, the
Settlement Agreement and the Findings and Conclusions,
which Walker County reviewed and approved, stated:

> The Court determines and declares (i) that any
> sale or credit bid of all or any portion of the
> Medical Center Property under Section 363 of the
> Bankruptcy Code is the factual and legal
> equivalent to, and is accordingly deemed to be, a
> "non-judicial foreclosure," and completely,
> unconditionally, and irrevocably satisfies the "non-
> judicial foreclosure" requirements of the provisions
> of the Intergovernmental Agreement and the Deed
> to Secure Debt; (ii) the amount(s) allocated and
> disbursed to Erlanger from the sale of or the
> Erlanger Credit Bids on some or all of the Medical
> Center Property constitute "the fair market value of
> [such] property encumbered by the Deed to
> Secure Debt as of the date of non-judicial
> foreclosure" within the meaning of the provisions

9

of the Intergovernmental Agreement and the "fair market value of the Premises as of the date of the non-judicial foreclosure" within the meaning of the provisions of the Deed to Secure Debt; and (iii) that the foregoing determinations are (A) an integral, essential aspect of any sale of the Medical Center Property under the Bankruptcy Code, without which the sale and the Court's approval of the sale would not take place; (B) an essential aspect of the Court's conclusion that Erlanger's rights are adequately protected within the meaning of Sections 361 and 363(e) of the Bankruptcy Code, and that the sale and its impact on interested parties is otherwise valid and satisfies the requirements for approval under Section 363 of the Bankruptcy Code; and (C) being relied upon by Erlanger and any third party purchaser . . . absent which Erlanger and any third-party purchaser . . . would suffer material and irreparable harm.

(Compl. ¶ 20 (alterations in original).)

Erlanger alleges that, as of December 29, 2015, the Hospital Authority owes it $34,451,200.14 under the Line of Credit, with interest continuing to accrue at a rate of

AO 72A

(Rev.8/8

$2,739.73 per day, plus late fees accruing at a rate of $400,000 per month. (Compl. ¶ 21.) According to Erlanger, no portion of the indebtedness had been paid when it filed its Complaint.  (Id. ¶ 22.)  Erlanger noted that sales of portions of the Erlanger Collateral had been approved by the Bankruptcy Court, and that Erlanger reasonably anticipated that a sale of all the Erlanger Collateral would be completed in the near term.  (Id.)

Erlanger alleged that, in spite of repeated demands, Walker County declined to pay, or to make arrangements to pay, any portion of the debt it owed to Erlanger under the Intergovernmental Agreement.  (Compl. ¶ 23.)  Instead, according to Erlanger, Walker County anticipatorily repudiated the Intergovernmental Agreement by taking the

11

position that it was not liable to Erlanger under that Agreement.  (Id. ¶ 24.)

Count One of Erlanger's Complaint contains a breach of contract claim based on the Intergovernmental Agreement.  (Compl. ¶¶ 25-31.)  Count Two of Erlanger's Complaint sets forth a claim for attorney's fees under O.C.G.A. § 13-6-11.  (Id. ¶¶ 32-34.)

## III.  Motion to Dismiss

### A.  Standard Governing a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).   When reviewing a motion to dismiss, the Court must take the allegations of the

12

complaint as true and must construe those allegations in the light most favorable to the plaintiff. Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012).

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions. Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court also does not accept as true "unwarranted deductions of fact or legal conclusions masquerading as facts." Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) (internal quotation marks and citation omitted).

13

Finally, the Court may dismiss a complaint if it does not plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   Simpson v. Sanderson Farms, Inc., 744 F. 3d 702, 708 (11th Cir. 2014) (internal quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555.  Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id.   Moreover, "[a] claim has

14

AO 72A

(Rev.8/8
2)

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss.  Id.  Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## B.  Discussion

As an initial matter, Walker County's reply brief contains some arguments that Walker County failed to present in its initial brief.  (See generally Reply Supp. Mot. Dismiss.)  The Court finds that Walker County waived any

15

arguments that it failed to present in its initial brief.  See In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").  The Court therefore will not consider the following arguments by Walker County: (1) discovery in the Hutcheson Action demonstrates that the Court should consolidate this case with the Hutcheson Action (Reply at 6-7); (2) the Complaint lacks sufficient factual allegations to support a breach of contract claim (id. at 13); and (3) the breach of contract claim is vague and ambiguous (id. at 21-23).[2]   After eliminating those arguments, four arguments remain: (1)

_____

[2]In any event, the Court notes that the Complaint contains sufficient factual allegations to support a breach of contract claim, and that the breach of contract claim is not vague or ambiguous.

AO 72A
(Rev.8/8
2)

sovereign immunity bars this action; (2) Erlanger failed to give Walker County proper ante litem notice; (3) Erlanger has not pleaded sufficient facts to support an attorneys' fees claim under O.C.G.A. § 13-6-11; and (4) this action is premature.  The Court discusses those arguments in turn.

### 1.   Sovereign Immunity

Walker County first argues that sovereign immunity bars Erlanger's claims against it because Erlanger is not a signatory to the Intergovernmental Agreement.   "The Georgia Constitution provides that, except as specifically provided therein, '[t]he sovereign immunity of the [S]tate and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of

17

such waiver.'" <u>State Dep't of Corrs. v. Developers Surety &</u>
<u>Indem. Co.</u>, 324 Ga. App. 371, 374, 750 S.E.2d 697, 700
(2013) (alterations in original) (quoting Ga. Const. art. I, § II,
¶ IX(e)).   "One of the Constitution's exceptions to the
defense of sovereign immunity is for 'any action ex
contractu for the breach of any written contract . . . entered
into by the [S]tate or its departments and agencies.'" <u>Id.</u>
(alterations in original) (quoting Ga. Const. art. I, Sec. II,
Para. IX(c)).

Erlanger's Complaint presents only contract-related
claims. As such, sovereign immunity does not bar those
claims.   The fact that Erlanger is not a signatory to the
Intergovernmental Agreement makes no difference.   To
overcome an assertion of sovereign immunity, Erlanger

18

"has the burden of showing that the contract sought to be enforced is in writing and contains all of the terms necessary to constitute a valid contract." <u>RTT Assocs., Inc. v. Ga. Dep't of Labor</u>, 333 Ga. App. 173, 175, 775 S.E.2d 644, 647 (2015) (internal quotation marks and citation omitted).  Erlanger has met that burden here.  Further, under Georgia law, "the plain language of the constitutional waiver of the State's sovereign immunity in the case of a suit for breach of a written contract entered into by the State expressly addresses the 'action' itself, not the party bringing the action."  <u>State Dep't of Corrs. v. Developers Sur. & Indemn. Co.</u>, 295 Ga. 741, 745, 763 S.E.2d 868, 872 (2014); <u>see also id.</u> at 746, 763 S.E.2d at 872 ("[O]ur constitutional provision waiving sovereign immunity for

19

actions sounding in contract also does so expressly in terms of 'actions,' not parties."); <u>Winchester Constr. Co. v. Miller Cnty. Bd. of Educ.</u>, 821 F. Supp. 697, 702 (M.D. Ga. May 19, 1993) (concluding that successor corporation under government contract was entitled to benefit from the waiver of sovereign immunity for contractual claims).

In any event, Erlanger's allegations are sufficient to allow the Court to conclude, at this stage of the proceedings, that Erlanger has standing to enforce the Intergovernmental Agreement. In its Complaint, Erlanger specifically alleges that it is an assignee of that agreement. (<u>See</u> Compl. ¶ 9 (stating that the Hospital Authority "assigned its rights under [the Intergovernmental Agreement]" to Erlanger), ¶ 27 ("Erlanger is the assignee of

20

the [Hospital] Authority under the Intergovernmental Agreement").)  The Intergovernmental Agreement and the Line of Credit Note support those allegations.  (See Line of Credit Note (Docket Entry No. 1-1) ("The indebtedness evidenced by this Note and the obligations created hereby are further secured by the assignment by Maker of payments payable by [Walker County] . . . as more particularly described, limited, and set out in [the Intergovernmental Agreement].");  Intergovernmental Agreement (Docket Entry No. 1-3) ¶ 2(e) ("All moneys received by the [Hospital] Authority from Walker or Catoosa [Counties] pursuant to the provisions of Paragraphs 4 and/or 5 hereof shall be delivered immediately to the [Hospital] Authority or its assigns, to satisfy the obligations

21

of the [Hospital] Authority under the Note."), ¶ 4(a) ("Subject to the limitations and conditions contained herein, in the event of an uncured default by the [Hospital] Authority under the Note, Walker [County] agrees to pay to the [Hospital] Authority or its assigns an amount equal to one-half (½) of the principal of and interest then due and payable on the Note."), ¶ 7(d) ("The Counties hereby acknowledge and agree that the [Hospital] Authority intends to assign its rights to receive payments from Walker and Catoosa [Counties] hereunder to the Holder as security for the payment of the Note and that as a result of any such assignment the Holder will have an interest herein.").)  Additionally, the Deed to Secure Debt indicates that the parties intended for Erlanger to be able to proceed directly against Walker and Catoosa

22

Counties under the Intergovernmental Agreement. (Deed to Secure Debt (Docket Entry No. 1-2) ¶ 8(c) ("Grantee shall first exercise its right of non-judicial foreclosure against the Premises . . . prior to seeking any payment from the Counties under the Intergovernmental Agreement.")). Thus, sovereign immunity does not bar Erlanger's claims in this action.

In any event, Erlanger likely would have standing to enforce the Intergovernmental Agreement as a third-party beneficiary. O.C.G.A. § 9-2-20(b) provides: "The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." O.C.G.A. § 9-2-20(b). "A third party has standing to enforce [such] a contract . . . if it clearly appears from the

23

contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient." Starrett v. Commercial Bank of Ga., 226 Ga. App. 598, 599, 486 S.E.2d 923, 925 (1997) (alterations in original) (internal quotation marks and citation omitted). Here, the Intergovernmental Agreement shows a clear intent to benefit Erlanger, and it is likely that Erlanger could sue under that Agreement as a third-party beneficiary. The Court therefore rejects Walker County's contention that sovereign immunity bars Erlanger's claims.

### 2.  Ante Litem Notice

Next, Walker County argues that Erlanger failed to satisfy the ante litem notice requirement. O.C.G.A. § 36-11-1 provides: "All claims against counties must be presented

24

within 12 months after they accrue or become payable or the same are barred, provided that minors or other persons laboring under disabilities shall be allowed 12 months after the removal of the disability to present their claims." O.C.G.A. § 36-11-1.  Substantial compliance with the ante litem notice requirement is all that is required.  See City of Columbus v. Barngrover, 250 Ga. App. 589, 596, 552 S.E.2d 536, 542-43 (2001) (observing that "[s]ubstantial compliance is all that is required to meet the statutory notice requirements" of O.C.G.A. § 36-11-1).   Erlanger satisfied the notice requirement of O.C.G.A. § 36-11-1 by sending a letter to the board of commissioners notifying the counties of its identity and the amount in controversy.  Chattanooga-Hamilton Cnty. Hosp. Auth., d/b/a Erlanger Health Sys. v.

<u>Hosp. Auth. of Walker, Dade, & Catoosa Counties, et al.</u>, Civil Action File No. 4:14-CV-0016-HLM, Compl. Ex. C (Docket Entry No. 1-3); <u>see also</u> Hutcheson Action, Compl. Ex. D at 2-3 (Docket Entry No. 1-6) ("If the Hospital Authority fails to cure within [thirty days], Erlanger intends to immediately begin the process of exercising its right of non-judicial foreclosure against the real property set forth in and pursuant to the Security Deed, and will pursue the deficiency, if any, against the Hospital Authority, as well as [Hutcheson], Walker County, and Catoosa County, as guarantors of the debt."). The fact that these letters did not expressly invoke the name of the Intergovernmental Agreement does not make the letters inadequate notice. Indeed, Walker County seems to recognize this, as it goes

on to state in its Motion to Dismiss, that the demand letter

filed as Docket Entry No. 1-6 in the Hutcheson Action

> purports to make a demand for payment under the Line of Credit note dated April 25, 2011, Management Agreement dated April 25, 2011, [t]he Deed to Secure Debt and Security Agreement dated April 25, 2011, Joinder to Line of Credit Note dated April 25, 2011, Letter of Agreement between Erlanger, [t]he Hospital Authority, [Hutcheson], HHD, and HMD approximately dated June 11, 2013.

(Mot. Dismiss ¶ 31.)   The Court therefore rejects this

argument.[3]

---

[3]Walker County's argument that Erlanger failed to provide proper ante litem notice appears to be at odds with its argument that Erlanger's claim in this action is premature. Walker County cannot have it both ways.  Either Erlanger's claims in this action have accrued or they have not.

27

### 3.   Attorneys' Fees

Walker County also argues that Erlanger failed to allege sufficient facts to support a claim for attorneys' fees under O.C.G.A. § 13-6-11.  O.C.G.A. § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."  O.C.G.A. § 13-6-11. Erlanger's allegations, viewed in the light most favorable to Erlanger, certainly would support a determination that Walker County has been stubbornly litigious, has acted in bad faith, and has caused Erlanger additional unnecessary

28

trouble and expense.  Erlanger's allegations indicate that Walker County forced Erlanger to file this action to collect sums that Walker County almost undoubtedly owed under the Intergovernmental Agreement.  Under those circumstances, Erlanger has pleaded a viable claim under O.C.G.A. § 13-6-11.  See Lewis v. Rogers, 201 Ga. App. 889, 900, 412 S.E.2d 632, 634 (1991) (finding that sufficient evidence existed to allow an attorneys' fees claim under O.C.G.A. § 13-6-11 to go to the jury, where "there was sufficient evidence of the refusal of the defendants to pay the outstanding balance of the credit card, even though they admitted that at least portions of the accrued charges were attributable to the business").

29

## 4.   Prematurity

Finally, Walker County argues that this action is premature.  For the following reasons, the Court disagrees. First, resolving the Hutcheson Action is not necessary to bring this suit to judgment, because Walker County's obligation to make payments under the Intergovernmental Agreement is absolute and unconditional.   The Intergovernmental Agreement provides:

> The obligation of Walker [County] to make the payments required pursuant to the provisions of Paragraph 4 hereof at the times and in the manner specified shall be absolute and unconditional and such payments shall not be abated or reduced because of (i) damage to or destruction of the Hospital, (ii) any failure or default on the part of the [Hospital] Authority under this Agreement, the Lease or any other document, (iii) any lack of notice of amounts due from Walker [County] under this Agreement, or (iv) for any reason whatsoever. Furthermore, Walker [County] shall not exercise

30

> any right of set-off or any similar right with respect
> to such payments, nor will it withhold any such
> payments because of any claimed breach of this
> Agreement by the [Hospital] Authority.

(Intergovernmental Agreement ¶ 4(g).)  Under Georgia law,

such an unconditional guaranty does not require

establishing liability or obtaining judgment against the

principal obligor. See Ford Motor Credit Co. v. Sullivan, 170

Ga. App. 718, 720, 318 S.E.2d 188, 190-91 (1984).

Instead, all that is required is that the principal obligor

default.   Id. at 720, 318 S..2d at 191. Indeed, the plain

language of the Intergovernmental Agreement itself ties

Walker County's liability to the Hospital Authority's default.

(See Intergovernmental Agreement ¶ 4(a) ("in the event of

an uncured default by the Authority under the Note, Walker

[County] agrees to pay"), ¶ 4(c) ("[u]pon receipt of notice of

a default by the [Hospital] Authority under either the Note or the Security Deed, Walker [County] shall have the following options"), ¶ 6 (discussing default).) Erlanger's allegations are sufficient to indicate that the Hospital Authority defaulted on its payment obligations to Erlanger. Under those circumstances, Erlanger need not sue the Hospital Authority to judgment before bringing the instant action against Walker County. See Greenwald v. Columbus Bank & Trust Co., 228 Ga. App. 527, 529, 492 S.E.2d 248, 251 (1997) ("Where, as here, the liability of the guarantors depends on the failure of the original debtor to pay the debt when due, it is not necessary that such debtor be sued to judgment before the institution of a suit against the guarantors.").

32

Additionally, the Intergovernmental Agreement provides that Walker County's obligation to make the payments under that Agreement is "absolute and unconditional," and prohibits reducing those payments for "any reason whatsoever." (Intergovernmental Agreement ¶ 4(g).) Given that language, the Hospital Authority's counterclaims in the Hutcheson Action would not impact or reduce Walker County's liability under the Intergovernmental Agreement. Thus, delaying these proceedings until after the resolution of the Hutcheson Action is not necessary.

Finally, Walker County's contention that it should receive a credit against the amount it owes under the Intergovernmental Agreement from the sale of the Erlanger Collateral under the Settlement Agreement in the

33

Bankruptcy Court does not warrant dismissing this action as premature. Those sales will be finalized long before this case is ripe for judgment. As such, dismissing this action as premature is not appropriate.

## IV.   Motion to Consolidate

Alternatively, Walker County argues that the Court must consolidate this action with the Hutcheson Action. Federal Rule of Civil Procedure 42(a) provides, in relevant part:

> If actions before the court involve a common question of law or fact, the court may:
>
> (1)   join for hearing or trial any or all matters at issue in the actions;
>
> (2)   consolidate the actions; or
>
> (3)   issue any other orders to avoid unnecessary cost or delay.

AO 72A

(Rev.8/8
2)

Fed. R. Civ. P. 42(a).  Rule 42(a) "is a codification of a trial court's inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."   Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985) (internal quotation marks and citation omitted).  A court's decision whether to consolidate actions "under Rule 42(a) is purely discretionary."   Id.   In exercising this discretion, a court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

AO 72A

(Rev.8/8
2)

Id. (alterations in original) (citation omitted).   "The court must also bear in mind the extent to which the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to a jury for deliberation."   Id.

As an initial matter, the Court notes that, in its initial Motion, Walker County completely failed to satisfy its burden to show that consolidation would be appropriate.  In any event, the Court exercises its discretion to decline to consolidate the cases.  The Court agrees with Erlanger that the Hutcheson Action is sufficiently far along that tying it to this lawsuit, in which discovery has not yet begun, would be

36

prejudicial to Erlanger. Indeed, as the Hutcheson Action has reached the summary judgment stage, consolidating it with this action would not conserve judicial resources or promote efficiency. Instead, consolidating the Hutcheson Action with this action would serve only to delay the resolution of the Hutcheson Action. Further, as discussed supra, nothing that happens in the Hutcheson Action should affect, limit, or reduce Walker County's liability under the guarantee. Moreover, the Hutcheson Action focuses on the Line of Credit Note and the Joinder Agreement, while the instant action focuses on the Intergovernmental Agreement. Additionally, any concern about inconsistent rulings is minimized here because the undersigned is presiding over both this action and the Hutcheson Action. Under those

37

circumstances, the Court declines to consolidate this case with the Hutcheson Action.

## V.   Conclusion

ACCORDINGLY, the Court **DENIES** Walker County's Motion to Dismiss or in the Alternative Motion to Consolidate [5].

IT IS SO ORDERED, this the _19_ day of February, 2016.

_____
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/8
2)